[Cite as *Riddle v. Riddle*, 2019-Ohio-4405.]

## IN THE COURT OF APPEALS OF OHIO
### THIRD APPELLATE DISTRICT
### MARION COUNTY

NATHAN RIDDLE,

    PLAINTIFF-APPELLEE,

CASE NO. 9-19-08

v.

NICOLE RIDDLE,

O P I N I O N

    DEFENDANT-APPELLANT.

**Appeal from Marion County Common Pleas Court
Family Division
Trial Court No. 18-DR-0027**

**Judgment Affirmed in Part, Reversed in Part, Cause Remanded.**

**Date of Decision:  October 28, 2019**

**APPEARANCES:**

    *Joel M. Spitzer* **for Appellant**

    *Todd A. Anderson* **for Appellee**

**WILLAMOWSKI, J.**

{¶1} Defendant-appellant Nicole Riddle ("Nicole") appeals the judgment of the Family Division of the Marion County Court of Common Pleas, raising various challenges to the shared parenting plan ordered by the trial court. For the reasons set forth below, the judgment of the trial court is affirmed in part and reversed in part.

*Facts and Procedural History*

{¶2} Nicole and Nathan Riddle ("Nathan") were married on October 19, 2005. Tr. 5. Nicole and Nathan lived in Marion County for the first four years of their marriage. Tr. 7. They left Marion County to live in Delaware County and then Crawford County before returning to Marion County in 2010. Tr. 7. They both lived in Marion County continuously until after Nathan and Nicole separated in 2017. Tr. 8. During this time, Nathan operated a barbershop in Marion County, and Nicole, who worked in the mental health field, operated a practice in Marion County. Tr. 10-11.

{¶3} In between 2010 and 2017, four children were born as the issue of this marriage. Tr. 5. Doc. 53. In between 2016 and 2017, Nathan and Nicole's oldest two children began attending Marion City Schools. Tr. 13. In October of 2017, Nicole removed her children from the school system because she felt that God had called her to homeschool them. Tr. 13, 15. Nicole testified that she and Nathan

agreed on this decision. Tr. 307. Nathan, however, testified that she made this decision without his agreement. Tr. 149.

{¶4} On December 31, 2017, Nathan and Nicole separated. Tr. 91. Nathan had already paid for the rent on their house in Marion County for January. Tr. 153. On January 5, 2018, Nicole moved to her mother's house in Crawford County and took the four children with her. Tr. 4. Nathan remained in Marion County. Nathan and Nicole worked out an arrangement in which Nathan had the children with him on Tuesday nights, Thursday nights, and weekends. Tr. 27. Nicole testified that she attempted to reconcile with Nathan and that she believed that he was a good father to his children. Tr. 17-18.

{¶5} On February 12, 2018, Nathan filed for a divorce. Doc. 1. At this time, all four of Nathan and Nicole's children were minors. Doc. 1. After February 12, 2018, Nicole stopped allowing Nathan visitation with the children at his apartment as had been practiced under their prior arrangement. Tr. 31. She only allowed him to see the children under her supervision at her mother's house in Crawford County. Tr. 31. Nicole testified that these actions were not in response to Nathan filing for a divorce. Tr. 30.

{¶6} In February of 2018, Nicole stopped homeschooling and enrolled her children into a public school system in Crawford County. Tr. 13, 35, 294. She enrolled the children in the school system the day after she consulted with her divorce attorney. Tr. 35. As a child, Nicole had been enrolled in this same school

system.  Tr. 167.  Nathan testified that Nicole had "hated" her experience there and that he did not want his children in that school district.  Tr. 167.  He also testified that Nicole did not consult with him before she enrolled the children in the local school system in Crawford County.  Tr. 167.

{¶7}  On September 10, 2018, Nathan filed a proposed shared parenting plan with the trial court.  Doc. 38.  On October 3, 2018, the trial court held the final hearing in this divorce proceeding.  Tr. 50.  After hearing the testimony of Nathan and Nicole, the trial court issued a shared parenting order on January 4, 2019.  Doc. 53.  Nicole filed her notice of appeal on January 28, 2019.  Doc. 60.  On appeal, she raises the following assignments of error:

### First Assignment of Error

**The trial court erred and abused its discretion in not making a specific finding that its allocation of parental rights and responsibilities were in the best interest of the minor children and in not making a specific finding that the adopted shared parenting plan was in the best interest of the minor children pursuant to Rev. C. 3109.04(B)(1).**

### Second Assignment of Error

**The trial court erred and abused its discretion in adopting the plaintiff's September 10, 2018 proposed shared parenting plan without a formal motion from the parties and erred and abused its discretion in adopting plaintiff's December 14, 2018 'post-trial' proposed shared parenting plan without a formal motion from the parties pursuant to Rev. C. 3109.04(D)(1)(a).**

**Third Assignment of Error**

**The trial court erred and abused its discretion in not only adopting the proposed shared parenting plan but also not considering the relevant factors in Rev. C. 3109.04(F)(2).**

**Fourth Assignment of Error**

**The trial court erred and abused discretion in adopting the plaintiff's September 10, 2018 proposed shared parenting plan because the September 10, 2018 proposed shared parenting plan was not submitted at a time less than 30 days prior to the hearing on the issue of the parental rights and responsibilities for the care of the children pursuant to Rev. C. 3109.04(G) and the trial court erred and abused its discretion in adopting the plaintiff's December 14, 2018 'post-trial' proposed shared parenting plan because the December 14, 2018 'post-trial' shared parenting plan was not submitted at a time less than 30 days prior to the hearing on the issue of the parental rights and responsibilities for the care of the children and submitted after the evidentiary hearing on the issue of the parental rights and responsibilities for the care of the children pursuant to 3109.04(G).**

**Fifth Assignment of Error**

**The trial court erred and abused its discretion in allocating all four of the minor children's tax exemptions to the plaintiff.**

**Sixth Assignment of Error**

**In support of the initial determination of parental rights and responsibilities for the minor child and pursuant of Ohio Revised Code 3109.04, the trial court erred against the weight of the evidence and abused its discretion in determining that the plaintiff-appellee should be granted custody.**

**Seventh Assignment of Error**

**The trial court erred and abused is discretion by not making a finding that the advantages of ordering the children back to Marion County outweighed the disadvantages.**

For the sake of analytical clarity, we will consider the second assignment of error prior to analyzing the other assignments of error.

*Second Assignment of Error*

**{¶8}** Nicole argues that the trial court erred by compelling the parties to submit shared parenting proposals in the absence of a motion from one of the parties that requests shared parenting.

Legal Standard

R.C. 3109.04(D)(1)(a) reads, in its relevant part, as follows:

**Upon the filing of a *pleading or motion* by either parent or both parents, in accordance with division (G) of this section, requesting shared parenting and the filing of a shared parenting plan in accordance with that division, the court shall comply with division (D)(1)(a)(i), (ii), or (iii) of this section * * *.**

(Emphasis added.) R.C. 3109.04(D)(1)(a).

Legal Analysis

**{¶9}** The express language of R.C. 3109.04(D)(1)(a) allows for a party to request shared parenting in a "pleading or motion." R.C. 3109.04(D)(1)(a). On September 10, 2018, Nathan filed a proposed shared parenting plan. Doc. 38. The opening lines of this document read, in its relevant part, as follows:

> **Now comes the Plaintiff, Nathan Riddle, by and through Counsel, and offers the following Proposed Shared Parenting Plan to the Court for review and approval. The Plaintiff hereby requests this Court to adopt this proposed shared parenting plan as an Order of the Court.**

Doc. 38. Thus, Nathan, one of the parties to this action, expressly requested shared parenting in a filing with the trial court. Nicole alleges that the trial court, at a status conference on December 14, 2018, ordered each of the parties to submit proposed shared parenting plans. Appellant's Brief, 10. This order was after Nathan requested shared parenting on September 10, 2018. Since Nathan requested a shared parenting plan in compliance with R.C. 3109.04(D)(1)(a), Nicole's second assignment of error is overruled.

### *First Assignment of Error*

**{¶10}** Nicole argues that the trial court failed to make an express finding that the allocation of parental rights was in the best interest of the children.

### Legal Standard

**{¶11}** Because the appellant's first and third assignments of error are similar in nature, we will set forth one legal standard here to govern both of these alleged errors. R.C. 3109.04(B)(1) governs the process of allocating parental rights and responsibilities, reading, in its relevant part, as follows:

> **When making the allocation of the parental rights and responsibilities for the care of the children under this section in an original proceeding or in any proceeding for modification of a prior order of the court making the allocation, *the court shall take into account that which would be in the best interest of the children*.**

(Emphasis added.)  R.C. 3109.04(B)(1).

**{¶12}** In determining whether a shared parenting plan is in the best interest of the children, R.C. 3109.04(F)(2) provides a list of non-exclusive factors that a trial court is to consider and then directs a trial court to also "consider all relevant factors, including, but not limited to, the factors enumerated in division (F)(1) of this section."  R.C. 3109.04(F)(2).  R.C. 3109.04(F)(1) similarly contains a list of non-exclusive factors that a trial court is to consider in the process of "determining the best interest of a child" under R.C. 3109.04.  R.C. 3109.04(F)(1).

**{¶13}** Further, "[p]ursuant to Civ.R. 52, a trial court may enter general judgment for the prevailing party."  *Siefker v. Siefker*, 3d Dist. Putnam No. 12-06-04, 2006-Ohio-5154, ¶ 6.  However, if "one of the parties in writing requests otherwise * * *, the court shall state in writing the findings of fact found separately from the conclusions of law."  Civ.R. 52.  This provision of Civ.R. 52 exists "to aid the appellate court in reviewing the record and determining the validity of the basis of the trial court's judgment."  *Werden v. Crawford*, 70 Ohio St.2d 122, 124, 435 N.E.2d 424 (1982).

**{¶14}** If a party to the action did not "request findings of fact and conclusions of law under Civ.R. 52," then the appellate court is to "presume the regularity of the proceedings at the trial level."  *Siefker* at ¶ 6, quoting *Bunten v. Bunten*, 126 Ohio App.3d 443, 447, 710 N.E.2d 757 (3d Dist. 1998).  In other words,

"the reviewing court must presume that the trial court applied the law correctly * * *." *Ratliff v. Ohio Dept. of Rehab. & Corr.*, 133 Ohio App.3d 304, 311-312, 727 N.E.2d 960 (10th Dist. 1999). Thus, "[a]s long as the trial court's judgment is supported by some competent and credible evidence, we must affirm." *Id.*

Legal Analysis

{¶15} We begin our analysis by noting that Nicole did not request findings of fact and conclusions of law from the trial court pursuant to Civ.R. 52. Without this Civ.R. 52 motion, the trial court was permitted to enter a "general [judgment] for the prevailing party." Civ.R. 52. *Wirt v. Wirt*, 9th Dist. Wayne No. 95CA0041, 1996 WL 170362, *2 (Apr. 10, 1996) (holding that, in the absence of a Civ.R. 52 motion, a general judgment was sufficient where "the trial court analyzed evidence * * *, which contains sufficient competent evidence to find that * * * a custody modification was in the best interests of the children.").

{¶16} Even if Nicole had filed a Civ.R. 52 motion, the wording of R.C. 3109.04(B)(1) does not require the trial court to make an express finding that the allocation of parental rights and responsibilities is in the children's best interest. Rather, R.C. 3109.04(B)(1) requires a trial to "take into account" what "would be in the best interest of the children." R.C. 3109.04(B)(1). R.C. 3109.04(F)(1) provides a non-exclusive list of factors that a trial court is to consider in the process of determining what is in the children's best interest. R.C. 3109.04(F)(1).

**{¶17}** In its judgment entry, the trial court analyzed the facts of this case under all of the factors listed in R.C. 3109.04(F)(1) in compliance with the statute. Doc. 53. By considering each of these factors, the trial court "t[ook] into account" what "would be in the best interest of the children" and did what was required under R.C. 3109.04(B)(1). R.C. 3109.04(F)(1). *Erwin v. Erwin*, 3d Dist. Union No. 14-05-45, 2006-Ohio-2661, ¶ (holding that under R.C. 3109.04(B)(1), appellate courts "must examine the record to determine (1) that the trial court considered all of the necessary factors listed in R.C. 3109.04(F) and (2) that there is competent, credible evidence supporting the trial court's conclusion * * *."). After reviewing the evidence in the record, we do not find any reason to dispense with the applicable presumption of regularity in the proceedings below. For these reasons, Nicole's first assignment of error is overruled.

### *Third Assignment of Error*

**{¶18}** Nicole argues that the trial court, in adopting the contested shared parenting plan, failed to consider the relevant factors listed in R.C. 3109.04(F)(2).

### Legal Standard

**{¶19}** We herein reincorporate the legal standard set forth under the first assignment of error.

### Legal Analysis

**{¶20}** We begin our analysis by noting that Nicole did not request findings of fact or conclusions of law from the trial court pursuant to Civ.R. 52. In a divorce

proceeding, "if the trial court failed to fully analyze the R.C. 3109.04(F)(2) best interest factors, in the absence of a Civ.R. 52 request[,] it was not required to do so." *Redmond v. Wade*, 4th Dist. Lawrence No. 16CA16, 2017-Ohio-2877, ¶ 54. Since Nicole did not request findings of fact and conclusions of law, we will examine the record to determine whether the judgment of the trial court is supported by some competent, credible evidence. In the absence of evidence to the contrary, we will "presume the regularity of the trial court proceedings and presume that the trial court properly applied the law to the facts of the case." *Id.*

{¶21} In this case, the record indicates that the trial court's decision to order a shared parenting plan was supported by some competent, credible evidence. The evidence in the record indicates that Nathan and Nicole were able to have a functional visitation arrangement for a time before Nathan filed for a divorce. Tr. 26. R.C. 3109.04(F)(2)(a). However, at other junctures, Nicole and Nathan did not cooperate regarding his visitation and did not agree on matters, such as the children's schooling. Tr. 149, 164. At the hearing, Nathan testified that he and Nicole did not always act in a civil manner towards each other and admitted that there was a "high level of conflict" between him and Nicole. Tr. 194, 215. He also admitted that he knew a high level of conflict could make shared parenting difficult, but he stated that he wanted shared parenting because he wanted more input in the process of making decisions for the children. Tr. 194-195, 215.

{¶22} Nicole testified that Nathan was a good father, though she also accused him of drinking too much and claimed he had abandoned her family at other points during the divorce hearing. Tr. 16, 17-18, 41, 49. R.C. 3109.04(F)(2)(b). Tr. 17-18. Nicole also restricted Nathan's visitation after he filed for a divorce. R.C. 3109.04(F)(2)(b). Nathan denied drinking too much and denied leaving Nicole "destitute." R.C. 3109.04(F)(2)(b). Tr. 214, 245. At trial, there was no evidence of a "history of, or potential for child abuse, spouse abuse, other domestic violence, or parental kidnapping by either parent." R.C. 3109.04(F)(2)(c). In terms of geographic proximity, the testimony at trial indicated that both parents worked in Marion County; that Nathan lived in Marion County; that Nicole lived in neighboring Crawford County; and that the children had roots in Marion County. R.C. 3109.04(F)(2)(d). There was no guardian ad litem in this case. R.C. 3109.04(F)(2)(e).

{¶23} Further, R.C. 3109.04(F)(2) also directs the trial court to consider "all relevant factors, including, but not limited to, the factors enumerated in division (F)(1) of this section * * *." As we have already noted, the trial court applied all of the R.C. 3109.04(F)(1) factors to this case, making express findings in its judgment entry for each of the listed factors in that section. Doc. 53. After reviewing the evidence in the record, we do not find any evidence that would lead us to dispense with the presumption of regularity in the proceedings below. For these reasons, we

-12-

find that the trial court did not render a decision that was unsupported by competent, credible evidence. Thus, Nicole's third assignment of error is overruled.

*Fourth Assignment of Error*

**{¶24}** Nicole argues that Nathan did not comply with R.C. 3109.04(G) as he filed his proposed shared parenting plan less than thirty days before the final hearing.[1]

Legal Standard

**{¶25}** "R.C. 3109.04(G) governs the time limitations to file a shared parenting plan with the trial court * * *." *Clouse v. Clouse*, 3d Dist. Seneca No. 13-08-40, 2009-Ohio-1301, ¶ 34. This provision reads, in its relevant part, as follows:

> **The plan for shared parenting shall be filed with the petition for dissolution of marriage, if the question of parental rights and responsibilities for the care of the children arises out of an action for dissolution of marriage, or, in other cases, at a time at least thirty days prior to the hearing on the issue of the parental rights and responsibilities for the care of the children.**

R.C. 3109.04(G).

**{¶26}** "[T]he requirement in R.C. 3109.04(G) that a shared parenting plan must be filed at least thirty days prior to the hearing on parental rights and

---

[1] The exact wording of Nicole's assignment of error is "[t]he trial court erred and abused its discretion in adopting the plaintiff's September 10, 2018 proposed shared parenting plan because the * * * plan was *not* submitted at a time less than 30 days prior to the hearing." (Emphasis added.) Appellant's Brief, 11. R.C. However, 3109.04(G) directs parents to file shared parenting plans "at a time at least thirty days prior to the hearing on the issue of the parental rights and responsibilities for the care of the children * * *. R.C. 3109.04(G). Thus, the exact wording of Nicole's assignment of error alleges that Nathan complied with R.C. 3109.04(G). Based on the body of her argument, however, we assume that she intended to state that "plan *was* * * * submitted at a time less than 30 days prior to the hearing." (Emphasis added.) Appellant's Brief, 11. We will evaluate this assignment of error accordingly.

responsibilities is directory, not mandatory." *Gould v. Gould*, 9th Dist. Summit No. 28410, 2017-Ohio-7047, ¶ 6, quoting *Harris v. Harris*, 105 Ohio App.3d 671, 674, 664 N.E.2d 1304, 1306 (2d Dist. 1995).

> **Instead of creating an inflexible rule requiring all plans to be submitted 30 days before trial, a judge has discretion to grant leave to file an untimely plan, as long as due process rights are protected by allowing the opposing party adequate opportunity to address the issue and present relevant evidence at trial.**

*In re Minnick*, 12th Dist. Madison No. CA2003-01-001, 2003-Ohio-4245, ¶ 12.

Legal Analysis

{¶27} Nathan filed a proposed shared parenting plan with the trial court on September 10, 2018. Doc. 38. Since the hearing on the matter of parental rights was held on October 3, 2018, Nathan's proposed shared parenting plan was not timely filed with the trial court "at least thirty days prior to the hearing on the issue of the parental rights and responsibilities for the care of the children." R.C. 3109.04(G). *See* Tr. 1. However, Nicole did not raise this issue before the trial court. "[I]n civil as well as criminal cases, [the] failure to timely advise a trial court of possible error, by objection or otherwise, results in a waiver of the issue for purposes of appeal." *Goldfuss v. Davidson*, 79 Ohio St.3d 116, 121, 679 N.E.2d 1099, 1103 (1997). Thus, this matter was not properly preserved for consideration on appeal and cannot now be raised "for the first time * * *." *Glendall-Grant v. Grant*, 8th Dist. Cuyahoga No. 105895, 2018-Ohio-1094, ¶ 10 (addressing the

"untimely filing of [a] shared parenting plan" after the appellant failed to object before the trial court).

**{¶28}** Even if Nicole had objected before the trial court, this argument would still not provide grounds for reversing the trial court's decision. Appellate courts across this state have held "that the requirement in R.C. 3109.04(G) that a shared parenting plan must be filed at least thirty days prior to the hearing on parental rights and responsibilities is directory, not mandatory." *Harris, supra,* at 674. *See also Siegel v. Siegel*, 1st Dist. Hamilton No. C-140296, 2015-Ohio-1710, ¶ 9-10; *Swain v. Swain*, 4th Dist. No. 04CA726, 2005-Ohio-65, ¶ 13; *Hampton-Jones v. Jones*, 8th Dist. Nos. 77279, 77412, 2001 WL 902785, *4 (Aug. 9, 2001). The fact that Nathan filed within the thirty-day limit does not bar his proposal from consideration. *Id*. Further, the record indicates that Nicole did have an opportunity to respond. Nicole was aware of Nathan's request; had twenty-three days to respond to this proposed shared parenting plan before the hearing; and had an opportunity to present evidence at the hearing on October 3, 2018.

**{¶29}** Nicole similarly challenges Nathan's post-hearing shared parenting proposal as failing to comply with R.C. 3109.04(G). Doc. 51. Prior to the divorce hearing, Nicole filed a trial brief in which she requested custody of the children. Doc. 47. At the hearing, Nicole testified that she did not want to have a shared parenting plan and had an opportunity to voice her opposition to shared parenting. Tr. 313. Nathan, having requested and proposed a shared parenting plan, testified

that he wanted such an arrangement. Tr. 194, 281. The trial court apparently determined that a shared parenting plan was in the best interest of the children and, at a subsequent status conference, ordered Nicole and Nathan to file proposed shared parenting plans. Appellant's Brief, 10. Appellee's Brief, 17.

{¶30} On December 14, 2018, Nathan filed his proposed shared parenting plan. Doc. 51. However, Nicole never filed a proposed shared parenting plan. Thus, the trial court gave Nicole the opportunity to file an alternative shared parenting plan, but she refused this offer. We see no indication in the record that the trial court abused its discretion in this matter. *See Clouse, supra*, ¶ 41 (holding "that the trial court did not abuse its discretion under R.C. 3109.04(G) in granting [appellee] leave to file a shared parenting plan after the final divorce hearing * * *.").

{¶31} In this case, Nicole was aware that Nathan was seeking shared parenting; had adequate time to respond to his proposed shared parenting plan; had the opportunity to argue against shared parenting at the divorce hearing; and was given the opportunity to file her own shared parenting plan. *See Clouse, supra*, at ¶ 41. After examining the evidence in the record, we do not find any indication that the trial court abused its discretion in allowing Nathan's proposed shared parenting plan to be submitted within thirty days of the hearing. We also do not find any indication that the trial court abused its discretion in allowing both parties to have

the opportunity to file a revised shared parenting plan after the status conference.

For these reasons, Nicole's fourth assignment of error is overruled.

*Fifth Assignment of Error*

**{¶32}** Nicole argues that the trial court erred in awarding all four of the tax

exemptions for the children to Nathan.

Legal Standard

**{¶33}** R.C. 3119.82 governs the process of designating the parent who may

claim dependent children for federal income tax purposes and reads, in its relevant

part, as follows:

> **[W]henever a court issues \* \* \* a court child support order \* \* \*, the court shall designate which parent may claim the children who are the subject of the court child support order as dependents for federal income tax purposes \* \* \*. \* \* \* If the parties do not agree, the court, in its order, may permit the parent who is not the residential parent and legal custodian to claim the children as dependents for federal income tax purposes only if the court determines that this furthers the best interest of the children \* \* \*. In cases in which the parties do not agree which parent may claim the children as dependents, the court shall consider, in making its determination, any net tax savings, the relative financial circumstances and needs of the parents and children, the amount of time the children spend with each parent, the eligibility of either or both parents for the federal earned income tax credit or other state or federal tax credit, and any other relevant factor concerning the best interest of the children.**

R.C. 3119.82. "Under the plain language of the statute, a trial court is not required

to state on the record its reasons for awarding tax dependency exemptions." *Clark*

*v. Clark*, 3d Dist. Union No. 14-06-56, 2007-Ohio-5771, ¶ 35. "However, '[w]hile

-17-

the trial court does not need to state a basis for allocating the exemption, the record does need to include financial data in relation to the above factors to support the trial court's decision.'" *Id*. at ¶ 35, quoting *Ankney v. Bonos*, 9th Dist. Summit No. 23178, 2006-Ohio-6009, ¶ 40, *rev'd on other grounds*.

Legal Analysis

**{¶34}** In this case, the trial court determined that "[t]he father shall be entitled to claim the minor children on all of his local, state, and federal income taxes for the tax year 2018 and each year thereafter." Doc. 53. The trial court did not make the express findings as to why it reached this determination. Doc. 53. While the trial court was not required to make express findings to support its decision, the evidence in the record still needs to support its decision. We turn now to determining whether the record supports the trial court's decision in this matter.

**{¶35}** We begin our analysis by noting that neither party asked for this particular arrangement. Nathan requested that he and Nicole each claim two children every year on their taxes. Tr. 212. Nicole, on the other hand, requested that she and Nathan alternate claiming all four children every other year. Tr. 90. Since the parties did not agree, the trial court was required to consider

> **any net tax savings, the relative financial circumstances and needs of the parents and children, the amount of time the children spend with each parent, the eligibility of either or both parents for the federal earned income tax credit or other state or federal tax credit, and any other relevant factor concerning the best interest of the children.**

R.C. 3119.82. The record indicates that Nicole's annual income is $21,745.00 and that Nathan's annual income is between $45,000.00 and $50,000.00. Doc. 53. Thus, Nathan makes more than double Nicole's annual income. Nathan was ordered to pay $936.38 in child support each month but was not required to make any spousal support payments. Doc. 53.

{¶36} Under the shared parenting plan, the children will spend the same amount of time with each parent. Doc. 53. Nevertheless, considering that Nicole is the only parent eligible for the earned income tax credit, claiming all of the children on Nathan's taxes would be less beneficial to the children financially. *See Montgomery v. Montgomery*, 6th Dist. Huron No. H-06-035, 2007-Ohio-2539, ¶ 28. Further, at the time of this divorce, Nathan and Nicole owed the Internal Revenue Service $29,308.07 in back taxes. Tr. 93. The trial court found that this sum was a marital debt. Doc. 53.

{¶37} On appeal, Nathan argues that the trial court's decision should remain undisturbed because Nicole failed to request findings of fact and conclusions of law pursuant to Civ.R. 52. This means that the trial court could enter a general judgment and was not required to state the findings that supported this determination expressly. However, regardless of whether a party files a Civ.R. 52 request, the evidence in the record must still support the trial court's decision. After considering the relevant financial information in the record, we cannot discern the rationale for

designating Nathan alone as the parent who may claim all four children every year for tax purposes. The trial court must either clarify the rationale behind this decision or modify its order as to this issue. Nicole's fifth assignment of error is sustained.

*Sixth Assignment of Error*

**{¶38}** Nicole argues that the trial court made a determination that was against the manifest weight of the evidence by giving Nathan custody of the children.

Legal Standard

**{¶39}** "When making a determination regarding parental rights, the domestic relations court must follow statutory guidelines." *King v. King*, 3d Dist. Union No. 14-11-23, 2012-Ohio-1586, ¶ 8. R.C. 3109.04(L) reads, in its relevant part, as follows:

> **(5) Unless the context clearly requires otherwise, if an order is issued by a court pursuant to this section and the order provides for shared parenting of a child, both parents have "custody of the child" or "care, custody, and control of the child" under the order, to the extent and in the manner specified in the order.**
>
> **(6) Unless the context clearly requires otherwise and except as otherwise provided in the order, if an order is issued by a court pursuant to this section and the order provides for shared parenting of a child, each parent, regardless of where the child is physically located or with whom the child is residing at a particular point in time, as specified in the order, is the "residential parent," the "residential parent and legal custodian," or the "custodial parent" of the child.**
>
> **(7) Unless the context clearly requires otherwise and except as otherwise provided in the order, *a designation in the order of a***

> ***parent as the residential parent for the purpose of determining the
> school the child attends * * * does not affect the designation
> pursuant to division (L)(6) of this section of each parent as the
> "residential parent," the "residential parent and legal custodian,"
> or the "custodial parent" of the child.***

(Emphasis added.)  R.C. 3109.04(L)(5-7).

{¶40} Appellate courts "review[] a domestic relations court's decision regarding parental rights for an abuse of discretion." *King* at ¶ 9.  "Under the abuse of discretion standard, an appellate court is not to substitute its judgment for the trial court's judgment." *Mousa v. Saad*, 3d Dist. Marion No. 9-18-12, 2019-Ohio-742, ¶ 29, citing *Schroeder v. Niese*, 2016-Ohio-8397, 78 N.E.3d 339, ¶ 7 (3d Dist.). Thus, a mere error of judgment does not rise to the level of an abuse of discretion. *Siferd v. Siferd*, 2017-Ohio-8624, 100 N.E.3d 915, ¶ 16 (3d Dist.).  "[T]o constitute an abuse of discretion, the trial court's decision must be unreasonable, arbitrary, or capricious." *Southern v. Scheu*, 3d Dist. Shelby No. 17-17-16, 2018-Ohio-1440, ¶ 10.

### Legal Analysis

{¶41} In its judgment entry, the trial court ordered a shared parenting arrangement.  Doc. 53.  Under a shared parenting plan, "both parents have "custody of the child[ren] * * *." R.C. 3109.04(L)(5).  The trial court's order does not alter the arrangement set forth in R.C. 3109.04(L)(5).  Doc. 53.  In the shared parenting plan, the trial court "ORDERED that the parties shall share the parental rights and responsibilities  pursuant  to  the  shared  parenting  plan  attached  hereto  and

incorporated herein." Doc. 53. The trial court further stated that "[b]oth parties shall be designated the custodial and residential parent for the minor children during his/her individual parenting time period with the minor children." Doc. 53. Thus, contrary to the assertion in this assignment of error, the trial court did not award custody of the children to Nathan. Doc. 53.

{¶42} While Nicole, in her assignment of error, argues against the trial court's award of custody to Nathan, she seems to be arguing against the trial court's decision to name Nathan the residential parent for school placement purposes. R.C. 3109.04(L)(7) gives the trial court the authority to designate one of the parents as the residential parent for the purposes of school placement. R.C. 3109.04(L)(7). Doc. 53. The trial court acted pursuant to this provision in naming Nathan as the residential parent for school placement purposes. Doc. 53. For this reason, we will examine whether the trial court abused its discretion in making this determination.

{¶43} In this case, Nicole and Nathan disagreed strongly on the issue of school placement. Prior to their separation, Nicole took the children out of Marion City Schools because she believed that God had called her to homeschool them. Tr. 13, 150. At trial, Nathan testified that Nicole did this without his approval. Tr. 150. Nicole then left Marion County with her children, moving to her mother's house in Crawford County in January of 2018. Tr. 239. Nathan testified that Nicole moved with the children without notifying him prior to leaving. Tr. 154. After moving,

Nicole placed the children into a public school in Crawford County without consulting Nathan. Tr. 165. See Doc. 53, citing R.C. 3109.04(F)(1)(f).

**{¶44}** At the time of trial, Nathan still lived in Marion County and requested to be named the residential parent for school placement purposes. Doc. 53. He wanted to place the children back into Marion City Schools where they had been enrolled prior to being homeschooled by Nicole in between October of 2017 and February of 2018. Tr. 13, 294. Doc. 53, citing R.C. 3109.04(F)(1)(a). Nicole testified that she and Nathan moved back to Marion County in 2010 after having lived outside of Marion County for roughly one year. Tr. 7. She also testified that she and the children had lived continuously in Marion County until she moved in January of 2018. Tr. 4, 8. Since her oldest child had been born in 2010, Nicole admitted that the children had spent almost all of their lives in Marion County. Tr. 5, 8.

**{¶45}** At trial, Nathan and Nicole both testified that the children had connections to the community in Marion County. Tr. 73, 202. *See* R.C. 3109.04(F)(1)(d). Further, Nicole, who works in the mental health field, opened a practice in Marion County in 2016. Tr. 9. At trial, she testified that she still worked in Marion County even though she lived in Crawford County. Tr. 9-10. Similarly, Nathan still operates his business in Marion County. Tr. 11, 146.

**{¶46}** Based on the evidence produced at trial, the trial court found that "[i]t is unknown if the children are adjusting to their new school or involved in activities

in Crawford County[.]" Doc. 53, citing R.C. 3109.04(F)(1)(d). The trial court further found that the children had "resided in Marion County for seven years"; that the children "were acclimated to their home, community, church, and school" in Marion County; and that Nicole "abruptly moved herself and her children to Crawford County * * *." Doc. 53, citing R.C. 3109.04(F)(1)(d). The trial court also found that "[i]t [was] difficult to know the emotional impact of the abrupt removal of the children from their home, and school." Doc. 53, citing R.C. 3109.04(F)(1)(e).

**{¶47}** The evidence produced at trial indicates that Marion City Schools is a place where the children have previously attended school; is located in the same city as the workplaces of both Nicole and Nathan; and is situated in a community in which the children have roots. After reviewing the evidence in the record, we conclude that the trial court did not abuse its discretion in naming Nathan the residential parent for school placement purposes. Thus, Nicole's sixth assignment of error is overruled.

*Seventh Assignment of Error*

**{¶48}** The appellant asserts that the trial court abused its discretion by failing to make a finding that the advantages of requiring the children to move back to Marion County outweighed the disadvantages of such a move.

Legal Standard

**{¶49}** "[A] defendant has the burden of affirmatively demonstrating the error of the trial court on appeal." *State v. Gideon*, 2019-Ohio-2482, 130 N.E.3d 357, ¶ 14 (3d Dist.), quoting *State v. Stelzer*, 9th Dist. Summit No. 23174, 2006-Ohio-6912, ¶ 7. Thus, under App.R. 12(A)(2), an appellate court

> **may disregard an assignment of error presented for review if the party raising it fails to identify in the record the error on which the assignment of error is based or fails to argue the assignment separately in the brief, as required under App.R. 16(A).**

App.R. 12(A)(2). Under App.R. 16(A), the appellant's brief must include

> **[a]n argument containing the contentions of the appellant with respect to each assignment of error presented for review and the reasons in support of the contentions, with citations to the authorities, statutes, and parts of the record on which appellant relies.**

App.R. 16(A). In the absence of a legal argument, "[i]t is not the duty of an appellate court to search the record for evidence to support an appellant's argument as to any alleged error." *In re Adoption of C.N.A.*, 2018-Ohio-897, 108 N.E.3d 553, ¶ 10 (3d Dist.), quoting *State v. McGuire*, 12th Dist. Preble No. CA95-01-001, 1996 WL 174609, *14 (Apr. 15, 1996).

Legal Analysis

**{¶50}** Nicole lists a seventh assignment of error in her brief but does not provide a supporting legal argument. The appellant also did not include any citations to legal authorities or references to materials in the record. Since Nicole

did not raise this issue in a manner that comports with the Ohio Rules of Appellate Procedure, her seventh assignment of error is overruled.

*Conclusion*

**{¶51}** Having found no error prejudicial to the appellant in the particulars assigned and argued in the first, second, third, fourth, and sixth assignments of error, the judgment of the Family Division of the Marion County Court of Common Pleas is affirmed as to these issues. Having found no error prejudicial to the appellant in the particulars assigned but not argued in the seventh assignment of error, the judgment of the Family Division of the Marion County Court of Common Pleas is affirmed as to this issue. Having found error prejudicial to the appellant in the particulars assigned and argued in the fifth assignment of error, the judgment of the Family Division of the Marion County Court of Common Pleas is reversed as to this issue. This cause is remanded to the trial court for further proceedings consistent with this opinion.

*Judgment Affirmed in Part*
*Reversed in Part*
*And Cause Remanded*

**ZIMMERMAN, P.J. and PRESTON, J., concur.**

**/hls**